**UNITED STATES of America, Plaintiff,**

v.

**Candido MOYA, Defendant.**

**Crim. No. CR3–88–262–D.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 1, 1990.

James T. Jacks, Asst. U.S. Atty., Dallas, Tex., for plaintiff.

David W. Coody, Dallas, Tex., for defendant.

FITZWATER, District Judge:

The instant motion to withdraw guilty plea presents fundamental questions concerning the conduct a judge may consider when imposing a sentence governed by the Sentencing Reform Act of 1984 and whether a defendant may withdraw his guilty plea when the defendant's relevant conduct exposes the defendant to a more severe guideline sentence than he contemplated at the time of his plea.

I

Defendant Candido Moya ("Moya") was charged in a multi-count, multi-defendant indictment with conspiring to distribute and distributing heroin. The government alleges that Moya and others were part of a large scale family-operated heroin distribution network which federal agents conservatively estimate distributed at least six ounces of heroin per week over an extended period of time. The investigation, which lasted over one year, resulted in a 56–count superseding indictment naming 13 defendants. Moya was named in 11 of the counts, including the most serious: conspiracy to distribute heroin in an amount in excess of five kilograms.

Several co-defendants pleaded guilty. On the eve of trial Moya pleaded guilty to count 9, which charged him with distributing 22 grams of heroin. During the course of the plea proceeding Moya, his attorney, and the government agreed to a factual resume that stated Moya was responsible for distributing between 1 and 2.9 kilograms of heroin. Moya admitted this fact under oath.

The probation officer thereafter prepared a presentence report ("PSI") that concludes the conspirators distributed 17.7 kilograms of heroin during the period covered by the indictment. The PSI also states that Moya was one of the principal members of the conspiracy who carried out the distribution process. The probation officer has therefore predicated the calculation of the base offense level on the 17.7 kilograms of heroin said to have been involved in the conspiracy, rather than upon the 1 to 2.9 kilograms for which Moya and the government have agreed Moya is responsible.

The trial of four co-defendants commenced October 3, 1989 and concluded October 26, 1989. The probation officer issued the PSI on or about October 30, 1989. Over one month following the trial and issuance of the PSI, Moya filed the instant motion to withdraw guilty plea.

Moya bottoms his motion on two grounds. He contends, first, that his plea was based upon a mistaken, but reasonable, understanding of the government's agreement regarding the extent of his criminal responsibility for the illegal activity of the conspiracy. He asserts, second, that to the extent his counsel was mistaken about the government's agreement and did not take steps to ensure the government's position was as defendant believed, his plea was predicated upon "defective advice" but for which he would not have pleaded guilty.

The government opposes the relief sought. It points out that Moya not only was indicted on the conspiracy offense in count 1 but was also charged by an information with having previously been convicted of a felony drug offense. According to the government, this prior conviction served to increase significantly the range of punishment Moya faced. Had he been convicted at trial of the conspiracy charged in count 1, the mandatory minimum sentence he faced was 20 years in prison and he could have received up to life in prison. Instead, under the government's view of the case, Moya was permitted to plead guilty to count 9 of the superseding indictment charging distribution of approximately 22 grams of heroin. His prior conviction increased the maximum possible penalty on count 9 from 20 to 30 years imprisonment

but did not result in imposition of a minimum prison term. In the government's view, Moya successfully avoided a minimum 20–year prison term by his guilty plea.[1]

Although the government contends defendant sought the stipulation that he distributed between 1 and 2.9 kilograms of heroin during the relevant period, it concedes that this amount does reflect the government's position pertaining to the quantity of drugs to be considered in determining defendant's relevant conduct and resultant base offense level. The government also confirms that it agreed to so advise the probation office and states it has never advised the probation office that Moya should be considered more culpable.

According to the government, it intended that the recitation be treated "as if it were a stipulation entered into between the defendant and the government pursuant to Section 6B1.4 of the sentencing guidelines." The government concedes that such a stipulation does not bind the sentencing judge and asserts that it and defense counsel "specifically discussed the fact that the Court would not be bound by such an agreement and counsel for the defendant acknowledged that such a situation was a possibility." The government states that it continues to abide by the stipulation, has not asked the probation office to accord greater responsibility to Moya, but believes the probation office has legal support for attributing greater culpability to the defendant than is reflected in the stipulation.

The government opposes the motion to withdraw guilty plea because defendant received that for which he bargained, the court adequately cautioned the defendant about the inability of the defendant or his counsel to predict his guideline sentence at the time the plea was entered, and a mistaken prediction by counsel does not consti-

tute ineffective assistance under the Sixth Amendment.

## II

### A

■ Before turning to the question whether Moya should be permitted to withdraw his guilty plea, the court must determine as a preliminary matter whether it is constricted by the stipulation as to the amount of heroin that Moya distributed. If the court is bound, the motion is rendered moot since Moya concedes he can be sentenced on that basis.

Section 1B1.3(a)(1) of the Sentencing Guidelines requires the sentencing judge to consider "all acts or omissions ... for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction." The Application Notes state that, in the case of concerted criminal activity, whether or not charged as a conspiracy, conduct of others in furtherance of such joint activity that was reasonably foreseeable by the defendant is to be included. Sentencing Guidelines § 1B1.3, Application Note 1; *see also United States v. Warters*, 885 F.2d 1266, 1272 (5th Cir.1989) (sentence should be based only on known or foreseeable conduct of co-conspirators). It is upon this basis that the probation officer justifies calculating Moya's offense level using the full amount of heroin distributed by the conspiracy.[2]

The Fifth Circuit and most other circuits that have considered the issue have concluded that a judge is not limited in imposing sentence to consideration only of charges of which a defendant has been convicted. The judge may also take into account charges dropped as part of a plea agreement, uncharged conduct, and conduct of which the defendant has been acquitted. *United States v. Garcia*, 889 F.2d 1454, 1456–57 (5th Cir.1989) (district court not bound by specific quantity of drugs

---

1. The court need not now decide the validity of this contention. *See* discussion *infra* at note 5.

2. The court has yet to rule upon a factual objection by Moya or a co-defendant to the 17.7 kilogram figure. The court does not prejudge

that this amount is factually accurate. The court holds today only, as a matter of law, that the amount, if accurate, must be considered by the court.

mentioned in indictment; district court could properly include quantity of drugs that defendant represented he could deliver); *Warters*, 885 F.2d at 1273 (district court not limited by quantity of drugs mentioned in charging instrument); *United States v. Taplette*, 872 F.2d 101, 106 (5th Cir.) (Guidelines allow consideration of relevant conduct for which defendant was not convicted), *cert. denied*, — U.S. —, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989); *United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir.1989) (district court not bound by quantity of drugs mentioned in indictment); *United States v. Blanco*, 888 F.2d 907, 909–911 (1st Cir.1989) (sentencing court not limited to amount of drugs charged in count to which defendant pleaded guilty); *United States v. Fernandez*, 877 F.2d 1138, 1141–42 (2d Cir.1989) (trial court properly calculated defendant's sentence based upon full quantity of cocaine seized rather than smaller amount defendant admitted upon guilty plea); *United States v. Isom*, 886 F.2d 736, 738–39 (4th Cir.1989) (sentencing judge could properly consider offense of which jury acquitted defendant); *United States v. Ykema*, 887 F.2d 697, 700 (6th Cir.1989) (sentencing court not limited by plea agreement), *cert. denied*, — U.S. —, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990); *United States v. White*, 888 F.2d 490, 499 (7th Cir.1989) ("[t]he Guidelines treat success and failure, conviction and no conviction, alike in drug cases, so long as the amounts are ascertainable"); *United States v. Scroggins*, 880 F.2d 1204, 1214 (11th Cir.1989) ("under guideline sentencing, counsel cannot bind the sentencing discretion of the district judge or cloak the facts to reach a result contrary to the guidelines' mandate"), *petition for cert. filed*, — U.S. —, — S.Ct. —, — L.Ed.2d — (Nov. 24, 1989) (available on Westlaw, 1989 WL 163381). *But see United States v. Restrepo*, 883 F.2d 781, 786 (9th Cir.1989) (conduct that does not result in criminal conviction should not be considered in sentencing).

The Guidelines themselves provide the basis for this result. *See* Sentencing Guidelines § 1B1.3(a)(1) (requiring consideration of all acts for which defendant would be otherwise accountable); *id.* § 1B1.3(a)(2) (providing for aggregation of acts and omissions that are part of same course of conduct in drug offense cases); *id.* § 2D1.1, Application Note 12 ("[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level"). One of the primary concerns of the Sentencing Commission was to ensure that plea negotiation practices promote the statutory objectives of sentencing. *Id.* Part B—Plea Agreements, Introductory Commentary at 6.5. The Guidelines intend that sentences "reflect the seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A). The Introductory Commentary to the plea agreement portion of the Guidelines notes the expectation of Congress that judges will examine plea agreements to be certain that prosecutors have not used the agreements to undermine the purposes of the Guidelines. Sentencing Guidelines Part B—Plea Agreements, Introductory Commentary at 6.5 (citing S.Rep. No. 225, 98th Cong., 1st Sess. 63, 167 (1983) [U.S.Code Cong. & Admin. News 1984, p. 3182]).

Moreover, the Commentary manifests the Sentencing Commission's recognition "that sentencing is a judicial function and that the appropriate sentence in a guilty plea case is to be determined by the judge." *Id.* Thus, parties may not enter into stipulations of misleading or non-existent facts, Sentencing Guidelines § 6B1.4(a)(2) (policy statement); *id.* § 6B1.4, Commentary (policy statement), they must "fully and accurately disclose all factors relevant to the determination of sentence," *id.* § 6B1.4, Commentary (policy statement), and they must identify any facts relevant to sentencing about which they are in dispute, *id.* § 6B1.4(b) (policy statement). The court is not bound by the parties' stipulations of facts, "but may with the aid of the presentence report, determine the facts relevant to sentencing." *Id.* § 6B1.4(d) (policy statement); *id.* § 6B1.4, Commentary (court is not and cannot be expected to rely only upon parties' stipulation in determining sentence); *United States v. Gaines,*

888 F.2d 1122, 1123 (6th Cir.1989) (district court not bound by stipulation that defendant was a minor participant); *United States v. Nunley*, 873 F.2d 182, 187 (8th Cir.1989) (district court not bound by stipulation that defendant accepted responsibility).

The rationale for the Guidelines' approach is adequately explained elsewhere, *see, e.g., Blanco*, 888 F.2d at 909–11; *White*, 888 F.2d at 496–97; *Fernandez*, 877 F.2d at 1141–42, and the court will not reiterate it here. It is sufficient to note that the approach the Guidelines adopt is a compromise between real offense and charge offense sentencing systems, basing the sentence primarily upon the offense charged but taking into account a number of real offense elements such as the defendant's role in the offense, whether he used a firearm, and the seriousness of the offense as determined by the amount of money taken in a theft offense or the kind and amount of controlled substance at issue in a drug offense. Sentencing Guidelines Part A—Introduction at 1.5—1.6; *see also* Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L.Rev. 1, 8–12, 27 (1988). This compromise was necessary to prevent count manipulation, that is, the practice of dividing an indictment into multiple counts to increase or decrease the defendant's punishment.

Prohibiting the entry of misleading stipulations, and allowing the judge to rely on information outside a factual agreement, prevents "fact bargaining"—agreeing to facts calculated by the parties to produce a desired sentence. Under the Guidelines, parties are not permitted to "cloak the facts to reach a result contrary to the guidelines' mandate." *Scroggins*, 880 F.2d at 1214. This prohibits not only the entry of stipulations that are genuinely false but also those that purport to resolve disputed facts. *United States v. Forbes*, 888 F.2d

752, 754 (11th Cir.1988) (district court not bound by minor participant stipulation because otherwise government and defendant could resolve crucial, disputed facts undercutting court's fact-finding role). If a fact relevant to sentencing is uncertain or genuinely in dispute, the parties should so inform the judge. Sentencing Guidelines § 6B1.4, Commentary (policy statement). Only when a judge has access to all relevant information can he assure that the plea agreement does not undermine the purposes of the Guidelines and that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the offense. *See* Alschuler, *Departures and Plea Agreements Under the Sentencing Guidelines*, 117 F.R.D. 459, 474–75 n. 58 (1988) (court should reject plea agreements when judge does not know the facts of the actual offense behavior, *e.g.*, where defendant is charged with robbery, claims alibi, and agrees to plead to larceny because he is risk averse).[3]

It is therefore clear that the stipulation entered into by Moya and the government is not binding upon the court.

**B**

Having determined it is not bound by the stipulation set out in the factual resume, the court must next decide whether, as a matter of discretion, it may restrict itself to the facts to which the parties have agreed. If the court may do so, and chooses to sentence Moya on the basis he requests, his motion to withdraw guilty plea is likewise rendered moot.

The Guidelines prohibit the acceptance of a plea agreement that does not adequately reflect the seriousness of the actual offense behavior or that undermines the statutory purposes of sentencing. Sentencing Guidelines § 6B1.2(a) (policy statement). Sentences for distributing controlled substances are to be based upon the amount

---

**3.** Even in the one situation where the Guidelines preclude consideration of relevant conduct information—when a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others and in return the government agrees self-in-criminating information will not be used in calculating the guideline range—the government may not withhold the incriminating evidence from the court. Sentencing Guidelines § 1B1.8, Application Note 1.

and kind of controlled substance distributed. *Id.* § 2D1.1(a)(3). The court is thus obligated to base its sentence on Moya's relevant conduct as contemplated by the Guidelines and not upon an artificial construct of truth. Therefore, assuming the evidence that has a sufficient indicia of reliability to support its probable accuracy [4] demonstrates Moya should be held accountable for the conspiracy's heroin distribution in an amount greater than 2.9 kilograms, the court must sentence him on the more culpable basis.[5]

### C

The court now turns to the question whether Moya should be allowed to withdraw his guilty plea, either because he misunderstood the effect of his plea agreement or because his counsel failed to provide him effective assistance.

■ Fed.R.Crim.P. 32(d) provides that a court may allow a defendant to withdraw a guilty plea when a motion to withdraw is made prior to sentencing. The standard for deciding the withdrawal issue is whether "for any reasons the granting of the privilege seems fair and just." *United States v. Carr*, 740 F.2d 339, 343 (5th Cir. 1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct.

1865, 85 L.Ed.2d 159 (1985). In *Carr* the Fifth Circuit enumerated seven factors to be considered when applying this standard.[6] The court is to evaluate these factors in light of the totality of the circumstances. *Id.* at 344. The defendant has the burden of proving that withdrawal of the plea is justified. *Id.; United States v. Iddeen*, No. CR3-86-141-D, slip op. at 2 (N.D.Tex. Sept. 28, 1987), *aff'd*, 851 F.2d 359 (5th Cir.) (table), *cert. denied*, —— U.S. ——, 109 S.Ct. 266, 102 L.Ed.2d 254 (1988).

### 1

■ *Carr* first inquires whether a defendant has asserted his innocence. Moya's motion does not specifically allege his innocence of the crime to which he pleaded guilty. In fact, he concedes he is guilty of distributing 1 to 2.9 kilograms of heroin. His only contention as to innocence is that he is not criminally responsible for the entire amount of heroin distributed by the conspiracy. This assertion is insufficient to justify withdrawal of his guilty plea.

Moya will have the opportunity to attack the accuracy of the information reported in the presentence report at the sentencing hearing. Fed.R.Crim.P. 32(a)(1); *United*

---

4. This is the proof standard applicable at sentencing. Sentencing Guidelines § 6A1.3(a).

5. Assuming the evidence demonstrates Moya should be held accountable only for distributing 1 to 2.9 kilograms of heroin, the court may nevertheless be required by § 6B1.2(a) to reject the plea agreement. Moya has admitted he is criminally responsible for the distribution of this amount of heroin. The base offense level for such distribution is 32. With Moya's undisputed criminal history score of IV, the guideline range is 168–210 months. Moya also has a prior felony drug conviction. Congress has determined that conviction for distribution of one or more kilograms of heroin after a prior conviction for a felony drug offense should carry a minimum 20-year prison sentence. 21 U.S.C. § 841(b)(1)(A)(i). In this case the count of conviction—count 9—does not carry a minimum prison term. If it did, the mandatory minimum would form the floor of the guideline range. *See* Sentencing Guidelines § 5G1.1(a) (where count of conviction carries a minimum mandatory sentence, that sentence is substituted for the guideline minimum); *id.* § 5G1.1(b) (where count of conviction carries a minimum mandatory sentence greater than guideline maximum,

that sentence is substituted for guideline maximum). Moya has admitted facts, however, that establish he could be punished pursuant to 21 U.S.C. § 841(b)(1)(A)(i). It would arguably undermine the statutory purposes of sentencing to sentence Moya within the guideline range applicable to count 9 for an offense level of 32 and criminal history category of IV when Moya has admitted undertaking conduct that would carry a greater penalty if he had been charged accordingly.

The court does not now reach this question because it will become moot if the court imposes a sentence in excess of 20 years on the basis of the guideline range calculated by the PSI (262 to 327 months). Even were the court to conclude the question remains ripe for determination, the court does not suggest that complying with the statutory purposes of sentencing requires the inflexible comparison of sentencing ranges without considering other potentially relevant factors that may indicate a sentence complies with congressional intent.

6. *Carr* was decided prior to the effective date of the Sentencing Guidelines, but the Guidelines do not appear to undercut the *Carr* factors or rationale.

*States v. Otero*, 868 F.2d 1412, 1415 (5th Cir.1989) (defendant must be allowed to raise factual contentions relevant to sentence at sentencing hearing).[7] He will be able to establish that he is not factually accountable for the full amount of heroin distributed by the conspiracy. Moya's argument relates to the severity of the sentence to which he is exposed, not to his actual innocence of the underlying crime. His motion cannot be construed to be an assertion of innocence. The first *Carr* factor substantially weighs against Moya.

■ The second *Carr* factor is whether the government would suffer prejudice if the withdrawal motion were granted. This factor intertwines with the fourth factor—whether the withdrawal would substantially inconvenience the court—and the seventh *Carr* factor—whether the withdrawal would waste judicial resources.

The trial of this case lasted approximately three weeks and involved the testimony of numerous witnesses, tape recordings, and exhibits. The government has apparently expended substantial time and money preparing for the trial of the case and for specific items such as transporting witnesses to trial and housing them during the course of trial. This court has also devoted a significant amount of its time on pretrial and posttrial motions, as well as in trial. Substantial resources have been spent compensating jurors for their time and transportation, as well as on expenditures related to court personnel who assisted the court in various stages of trial. Neither the court nor the government should be required to duplicate the time and money they have already devoted to this case merely because Moya now desires to change his plea.

Additionally, there is reason to believe the government would be prejudiced if it were now required to try this case as to Moya. A not insubstantial portion of the government's case, as it was tried, consisted of the testimony of co-defendants who testified pursuant to plea agreements. Certain of these witnesses are family members who have now been sentenced and their plea agreements have been consummated. It is possible these witnesses will not be inclined willingly to testify against another family member in a second trial. This may be particularly true of the government's key witness, Norma Aguilar. The importance of her testimony to the government's case and the possibility of the danger to which she exposed herself by cooperating with the government and testifying at trial are discussed in a prior opinion of the court. *See United States v. Paredes–Moya*, 722 F.Supp. 1402, 1414–17, 1421–22 (N.D.Tex.1989). This court will not blithely ignore the pressures that will be placed upon this witness if she is required to testify again when she would not be required to do so had Moya gone to trial with the other co-defendants. The court thus concludes the *Carr* factors of prejudice to the government in terms of time, money, and the strength of its case, as well as the inconvenience to the court and waste of judicial resources, militate against withdrawal.

■ The third *Carr* factor—whether the defendant has delayed in filing his withdrawal motion—also weighs against granting defendant's motion. Moya pleaded guilty on October 3, 1989. The PSI was issued on or about October 30, 1989. Moya waited until December 1, 1989, just five days before his originally scheduled sentencing, and over 30 days following the issuance of the PSI, to move to withdraw his plea. In the interim the trial of the defendants who pleaded not guilty was completed and verdicts were returned.

As *Carr* teaches, the rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered; the purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty. *Carr*, 740 F.2d

---

7. *Otero* does not expressly preclude the imposition of deadlines for raising such objections in advance of sentencing. *See, e.g.,* N.D.Tex. R. 10.9(b) & (e) (imposing deadlines for filing objections to PSI and addendum thereto).

at 345. In this case defendant's delay arguably falls into the latter category. By waiting until the completion of the trial to move to withdraw his guilty plea he was able to determine how a jury would view the evidence in the case. He could also observe and evaluate the effectiveness of the tactical decisions made by other defendants. Moreover, if the court permits Moya to withdraw his guilty plea at this time, Moya will effectively have obtained a severance to which he would not otherwise have been entitled if he had not pleaded guilty prior to trial.

2

The fifth and sixth *Carr* factors are the only ones that conceivably can weigh in Moya's favor. The fifth factor is whether close assistance of counsel was available; the sixth factor is whether the original plea was knowing and voluntary.[8] The grounds upon which Moya predicates his motion make it more logical to take up the sixth *Carr* factor and then consider the fifth.

According to Moya,[9] he was concerned at the time he entered his plea of guilty that he would be held accountable at sentencing for conduct for which he felt he was not responsible. He thus obtained the government's stipulation that limited his culpability to distribution of 1 to 2.9 kilograms of heroin. He posits that his plea was not knowingly entered because he mistakenly understood that he would not be sentenced on the basis of more culpable conduct.

This proposition is belied by Moya's sworn testimony at the time he entered his plea. Moya testified he was aware that neither the court nor his lawyer would be able to determine the guideline sentence for his case until after the PSI had been completed and he and the government had been given the opportunity to challenge the facts reported by the probation officer. He stated he understood that no one, including his lawyer, could predict what his sentence would be. He also said he understood that,

if the sentence the court imposed was more severe than he expected, he would still be bound by his guilty plea and would have no right to withdraw it. Moya also acknowledged that the court, and the court alone, would decide what his sentence would be.

The sixth *Carr* factor weighs against Moya because, in light of the court's explicit warnings, Moya could not reasonably have understood that his counsel's efforts constituted anything more than an advocate's attempt to limit the sentence exposure of his client.

The fifth *Carr* inquiry is whether Moya had available to him the close assistance of counsel. Moya asserts he did not because, if his attorney was mistaken about the government's agreement and the effect of the stipulation, the attorney did not take the steps necessary to ensure the government's position was as defendant believed.

A two-part test applies to challenges to guilty pleas based on ineffective assistance of counsel. First, the defendant must show his attorney's representation fell below an objective standard of reasonableness. Second, the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). Moya "must overcome a strong presumption that his attorney's conduct falls within the wide range of reasonable professional assistance." *United States v. Jennings*, 891 F.2d 93, 95 (5th Cir.1989). He must also "show a reasonable probability that, but for the errors [of counsel], he would have insisted on going to trial and would not have pleaded guilty." *Id.* The court concludes Moya has failed to satisfy either of the controlling tests.

The court initially examines the second consideration: whether Moya would

---

8. Moya does not contend his plea was coerced. To the extent he argues the plea was not voluntary because it was mistakenly entered, the court rejects the assertion for the reasons stated in deciding Moya's plea was knowingly entered.

9. For purposes of deciding this motion, the court has accepted as true the version of the facts on which Moya relies. The court need not therefore conduct an evidentiary hearing and Moya's request for a hearing is denied.

have insisted on going to trial and would not have pleaded guilty. The court finds this proposition to be implausible. Had Moya gone to trial on all counts against him—including the conspiracy charge—he would have exposed himself to a substantially greater range of punishment, including the possibility of a life sentence without parole.[10] The trial evidence proved beyond a reasonable doubt the guilt of the codefendants in many of the illegal activities in which Moya is implicated. Some of Moya's conduct was detailed at trial.[11] Moya knew he was guilty of at least the crime to which he pleaded guilty. It is reasonable to infer that Moya also recognized he could be convicted by a jury of several other counts which would significantly increase his sentence exposure. It is unlikely Moya would have incurred that inexorable risk on the basis he now asserts.

■ Even were the court to conclude Moya has satisfied the second requisite showing, the court would reject the contention that the representation afforded by Moya's counsel fell below an objective standard of reasonableness. Moya essentially argues that his attorney was ineffective because he failed to circumvent the Guidelines. The court cannot accept this proposition. As the court has already observed, there is a strong presumption that an attorney's conduct falls within a wide range of reasonable professional assistance. By advising his client to plead guilty, Moya's counsel eliminated Moya's potential exposure to more severe statutory penalties, including life imprisonment. At the same time, counsel attempted to craft a factual stipulation that he hoped would further limit his client's sentence. It is not clear to the court that Moya's counsel could have done anything different to achieve the result he sought. Even had counsel attempted to limit the sentence by entering a Fed.

R.Crim.P. 11(e)(1)(C) plea agreement that provided for a specific sentence, such agreements are still subject to rejection by the court if the stipulated sentence is not within the applicable guideline range and there is no justifiable reason to depart downward. Sentencing Guidelines § 6B1.2(c) (policy statement). Given the strictness of the Guidelines in this respect, Moya's attorney achieved a reasonable result: a stipulation from the government that Moya's conduct was limited to distribution of 1 to 2.9 kilograms of heroin and an agreement that the government would not advance to the probation officer the proposition that Moya was responsible for the distribution of more than 2.9 kilograms of heroin.

Measured by the applicable standard, the facts reflect that Moya's attorney represented Moya effectively. Counsel identified his client's desire to limit his term of imprisonment and took steps to attempt to achieve this objective. In light of the court's discussion with Moya on the record about the inability of a defendant to predict his sentence prior to the preparation of his PSI, Moya could not reasonably have assumed his attorney could guarantee the desired sentence. Moya's attorney did not provide ineffective assistance of counsel. *Cf. United States v. Turner*, 881 F.2d 684, 686–88 (9th Cir.) (inaccurate prediction of guideline range does not constitute ineffective assistance of counsel), *cert. denied*, — U.S. ——, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989); *United States v. Sweeney*, 878 F.2d 68, 70–71 (2d Cir.1989) (because choosing a sentence under the Guidelines is not a purely mechanical task, mistaken estimate of sentence is not ineffective assistance of counsel).

### III

Moya's guilty plea was fully informed, knowing, and voluntary. His motion to

---

**10.** The court does not suggest, following its review of the relevant conduct set forth in the PSI, that Moya would be subject to a life sentence absent a substantial upward departure from the applicable guideline range. At the time Moya pleaded guilty, however, he could have predicted neither the guideline calculation nor the sentence the court would impose.

**11.** While it is true that this evidence was not subjected to Moya's counsel's cross-examination or refutation by other evidence Moya might have offered, it is also likely that the government did not introduce all the evidence it possessed against Moya given that Moya was not on trial.

withdraw guilty plea is therefore denied. Moya shall be sentenced on February 16, 1990 at 9:00 a.m.

SO ORDERED.