**UNITED STATES of America, Plaintiff,**

v.

**Gary Jim PHILLIPS, Defendant.**

**Crim. No. CR3–89–066–D.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 1, 1990.

**46**

Candina Heath, Asst. U.S. Atty., Dallas, Tex., for plaintiff.

Arch McColl, III and Elizabeth Unger Carlyle of Bruner, McColl & McColloch, Dallas, Tex., for defendant.

FITZWATER, District Judge:

Defendant's objections to his presentence report present two questions that are basic to proper application of the Sentencing Guidelines. The first is whether the sentencing judge is bound by facts to which the government and defendant have agreed when the facts conflict with the presentence report. The second is whether the court may accept a plea agreement that is predicated on facts that do not adequately reflect the severity of the actual offense behavior.

I

Defendant Gary Jim Phillips ("Phillips") was charged in a two-count indictment with manufacture of phenylacetone and conspiracy to manufacture phenylacetone. He pleaded guilty to the manufacturing count. During the course of the plea proceeding, defendant and the government filed a factual resume that stated Phillips had constructed a clandestine laboratory for the manufacture of phenylacetone. The factual resume provided that the production capacity of the laboratory—based on the most abundant precursor—was two and one-half pounds of "phenalacetone." Phil-lips admitted the accuracy of these facts under oath.

The probation officer subsequently prepared a presentence report ("PSI"). The PSI states that DEA agents raided the laboratory and discovered a 22–liter reaction flask containing 10 liters of a liquid containing traces of phenylacetone, laboratory glassware, precursor chemicals, 5,000 grams of a white powdery substance, 8,000 grams of sodium acetate, four liters of amphetamine HCL, four liters of acetic anhydride, and miscellaneous laboratory equipment. The PSI states that DEA chemists prepared a clandestine laboratory report and concluded the production capability of the laboratory, based on the most abundant precursor, was "two to three pounds" and based on the capacity of the laboratory was "four to five pounds."

Later addenda to the PSI recognize that the DEA report does not unambiguously reflect the capacity figures reported to refer to amphetamine rather than phenylacetone. The addenda also state, however, that the probation officer discussed the matter with both the case officer and the DEA chemist, who assured the probation officer that the capacity figures referred to amphetamine rather than phenylacetone. Moreover, the addenda conclude that, if the sentence is to be based on phenylacetone, the correct amount of phenylacetone to use in calculating the guideline sentence is ten liters—the amount seized of a liquid containing traces of phenylacetone. The probation officer bases her offense level calculation on five pounds of amphetamine rather than upon the two and one-half pounds of phenylacetone stipulated in the factual resume or the ten liters of liquid containing traces of phenylacetone seized in the raid.

Phillips objects to the PSI's calculation of the offense level based on amphetamine rather than phenylacetone. He argues that the DEA report nowhere mentions the capacity of the laboratory to produce amphetamine but refers only to phenylacetone. He asserts that the laboratory was not capable of producing any amphetamine because no nitrogen, a necessary ingredient in the conversion of phenylace-

tone to amphetamine, was found. Moreover, the indictment accuses him only of the manufacture of phenylacetone, not amphetamine. He contends the government assured his attorney during plea negotiations that the DEA report referred only to phenylacetone. Phillips asserts that, in deciding to plead guilty to count 2, he had no notice that he would be sentenced based on amphetamine rather than phenylacetone. This is so, according to the defendant, because the indictment, the DEA report, and the factual resume never referred to any substance other than phenylacetone.[1] He argues that the DEA report contained three possible figures for the capacity of the laboratory and the parties agreed to a figure within that range. He thus contends the court is not permitted to ignore the stipulation of the parties and independently determine the capacity of the laboratory.

## II

### A

■ The dispute in this case arises because sentences in drug manufacturing cases are tied to the quantity and kind of controlled substance the defendant manufactured. *See* Sentencing Guidelines § 2D1.1(a)(3). In cases where no drugs are seized, or the quantity of drugs seized does not reflect the scale of the offense, the sentencing judge is required to approximate the quantity of the controlled substance. Sentencing Guidelines § 2D1.1(a)(3), Application Note 12 (cross reference to § 2D1.4, Application Note 2). In making this determination, the sentencing judge may consider the size or capability of any laboratory involved in the manu-

facture. Sentencing Guidelines § 2D1.4, Application Note 2.

■ The problem that has arisen in this case is that the parties have stipulated that Phillips' laboratory was capable of producing two and one-half pounds of phenylacetone. The PSI concludes that Phillips' laboratory was capable of producing five pounds of amphetamine and that ten liters of phenylacetone were seized.[2] Phillips argues that "where the laboratory report contains three possible figures for the capacity, and the parties have agreed on a figure within that range, the court may appropriately follow that stipulation in determining the guideline." The court disagrees.

In several instances the Sentencing Guidelines mandate consideration of facts in addition to those developed during plea proceedings. *See* Sentencing Guidelines § 1B1.3(a)(2) (providing for aggregation of acts and omissions that are part of same course of conduct in drug offense cases); *id.* § 2D1.1, Application Note 12 ("[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level"); *id.* § 1B1.3(a)(1) (requiring consideration of all acts for which defendant would be otherwise accountable). In interpreting these passages, the Fifth Circuit and most other circuits that have addressed the question have concluded that a judge is not limited in imposing sentence to consideration only of charges of which a defendant has been convicted. The judge may also take into account counts dropped as part of a plea agreement, uncharged conduct, and conduct of which the defendant has been ac-

---

**1.** The court observes that a defendant need not be specifically notified at the time of his plea of all the factors the court will take into account in passing sentence upon him. Sections 1B1.-3(a)(2), 2D1.1, and 6B1.4 were all part of the public record when Phillips entered into his plea agreement, and he therefore had notice that he would be subject to sentencing under these provisions. *United States v. Strong*, 891 F.2d 82, 85 (5th Cir.1989). The defendant need only have the opportunity to comment on the probation officer's determination and other matters the court takes into account at the sentencing hearing. Fed.R.Crim.P. 32(a)(1); *Unit-*

*ed States v. Otero*, 868 F.2d 1412, 1415 (5th Cir.1989).

**2.** Phillips objects to the calculation of his sentence based on the seizure of ten liters of a substance containing traces of phenylacetone. The Guidelines are clear, however, that "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." Sentencing Guidelines § 2D1.1(c).

quitted. *United States v. Moya,* 730 F.Supp. 35, 38–39 (N.D.Tex.1990) (citing cases).[3]

The approach the Guidelines adopt is a compromise between real offense and charge offense sentencing systems, basing the sentence primarily upon the offense with which the defendant is charged but taking into account a number of real offense elements such as the defendant's role in the offense, whether he used a firearm, and the seriousness of the offense as determined by the amount of money taken in a theft offense or the kind and amount of controlled substance at issue in a drug offense. *Moya,* 730 F.Supp. at 40 (citing Sentencing Guidelines Part A—Introduction at 1.5—1.6; Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest,* 17 Hofstra L.Rev. 1, 8–12, 27 (1988)). This compromise was necessary to prevent count manipulation, that is, the practice of dividing an indictment into multiple counts to increase or decrease the defendant's punishment. *Id.*

Phillips also argues that, regardless of the court's ability to consider facts in addition to those developed during a plea proceeding, the court may not consider evidence that contradicts facts developed at that proceeding. In Phillips' view, if the parties stipulate that a defendant delivered one ounce of a controlled substance, when in fact he delivered four ounces, a sentencing judge may consider the additional amount because the stipulation to delivery of one ounce does not logically preclude the finding that the defendant delivered additional quantities. In contrast, a laboratory can have only one capacity and a stipulation to a smaller capacity logically excludes the possibility of a larger capacity.

Even if the court were to accept Phillips' reasoning, his arguments do not provide a legal basis for ignoring the court's responsibility to uphold the purposes of the Guidelines. One of the primary concerns of the Sentencing Commission was to ensure that plea negotiation practices promote the statutory objectives of sentencing. *See* Sentencing Guidelines Part B—Plea Agreements, Introductory Commentary at 6.5. The Guidelines intend that sentences "reflect the seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A). Accordingly, Congress expects judges to examine plea agreements to be certain that prosecutors have not used the agreements to undermine the purposes of the Guidelines. Sentencing Guidelines Part B—Plea Agreements, Introductory Commentary at 6.5 (citing S.Rep. No. 225, 98th Cong., 1st Sess. 63, 167 (1983)).

This scrutiny is appropriate in view of the fact "that sentencing is a judicial function and that the appropriate sentence in a

---

**3.** Phillips suggests that *United States v. Silverman,* 889 F.2d 1531, 1539 (6th Cir.1989), and *United States v. Foster,* 889 F.2d 1049, 1055 (11th Cir.1989), impose limitations on the court's ability to consider "facts outside the court record." The court disagrees.

Both *Silverman* and *Foster* deal with the question whether a district court's consideration of other relevant conduct violated the government's agreement not to prosecute the defendant for related acts he committed. In *Silverman* the Sixth Circuit remanded the question to the district court, specifically pointing out its general rule that a district court must consider all related conduct supported by evidence with at least minimal indicia of reliability. 889 F.2d at 1539. In *Foster* the Eleventh Circuit concluded that, where the defendant agreed after his conviction to brief the government on his involvement in drug-trafficking and the government agreed not to use any information disclosed, the government's deliberate disclosure of the information to the probation officer was a breach of the agreement and the proper remedy was resentencing by a judge who did not know the disclosed information. 889 F.2d at 1056. Neither case is binding upon this court. Moreover, the probation officer is an employee of the court, not a member of the prosecutor's staff. Phillips does not suggest that the prosecutor in this case urged the probation officer to calculate the sentence based on amphetamine rather than phenylacetone. Thus there is no suggestion that the prosecutor has violated any specific agreement. Finally, although the facts of *Foster* are unclear, it would appear that in *Foster* the defendant was providing information pursuant to Guideline § 1B1.8(a), which allows a defendant to provide information about the criminal activities of others in exchange for an agreement not to use the incriminating information. *Cf. United States v. Shorteeth,* 887 F.2d 253, 256–57 (10th Cir.1989) (consideration of self-incriminating information in sentencing violated § 1B1.8 agreement). Guideline § 1B1.8(a) is inapplicable in this case.

guilty plea case is to be determined by the judge." *Id.* Thus, under the Guidelines parties may not enter into stipulations of misleading or non-existent facts, Sentencing Guidelines § 6B1.4(a)(2) (policy statement); *id.* § 6B1.4, Commentary (policy statement), they must "fully and accurately disclose all factors relevant to the determination of sentence," *id.*, and they must identify any facts relevant to sentencing about which they are in dispute, *id.* § 6B1.4(b) (policy statement). Additionally, the court is not bound by the parties' stipulations of facts, "but may with the aid of the presentence report, determine the facts relevant to sentencing." *Id.* § 6B1.4(d) (policy statement); *id.* § 6B1.4, Commentary (court is not and cannot be expected to rely only upon parties' stipulation in determining sentence); *United States v. Gaines*, 888 F.2d 1122, 1123 (6th Cir.1989) (district court not bound by stipulation that defendant was a minor participant); *United States v. Nunley*, 873 F.2d 182, 187 (8th Cir.1989) (district court not bound by stipulation that defendant accepted responsibility).

"Prohibiting the entry of misleading stipulations, and allowing the judge to rely on information outside a factual agreement, prevents 'fact bargaining'—agreeing to facts calculated by the parties to produce a desired sentence." *Moya*, 730 F.Supp. at 40. The Guidelines do not permit parties to "cloak the facts to reach a result contrary to the guidelines' mandate." *Id.* (quoting *United States v. Scroggins*, 880 F.2d 1204, 1214 (11th Cir.), *petition for cert. filed*, — U.S. —, — S.Ct. —, — L.Ed.2d — (Nov. 24, 1989) (available on Westlaw, 1989 WL 163381)). "This prohibits not only the entry of stipulations that are genuinely false but also those that purport to resolve disputed facts." *Id.* (citing *United States v. Forbes*, 888 F.2d 752, 754 (11th Cir.1988) (district court not bound by minor participant stipulation because otherwise government and defendant could resolve crucial, disputed facts undercutting court's fact-finding role)). "If a fact relevant to sentencing is uncertain or genuine-

ly in dispute, the parties should so inform the judge." *Id.* (citing Sentencing Guidelines § 6B1.4, Commentary (policy statement)). "Only when a judge has access to all relevant information can he assure that the plea agreement does not undermine the purposes of the Guidelines and that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the offense." *Id.*

## B

██ Having concluded that it is not cabined by the content of the factual resume, the court next decides whether it should reject the plea agreement. The Sentencing Guidelines prohibit the acceptance of a plea agreement that does not adequately reflect the seriousness of the actual offense behavior or which undermines the statutory purposes of sentencing. Sentencing Guidelines § 6B1.2(a) (policy statement). The court concludes that it need not reject the plea agreement.

Sentences for manufacturing controlled substances are based upon the amount and kind of controlled substance manufactured. Sentencing Guidelines § 2D1.1(a)(3). Although the factual resume and PSI differ as to the capacity of Phillips' laboratory, the court will be able to determine this factual question at the time of sentencing. The court will also be able to predicate its sentence upon Phillips' actual conduct, even if the record should show him to be more culpable than do the facts to which he has agreed.[4] The court will rest its sentence on Phillips' relevant conduct as contemplated by the Guidelines, not as constricted by the factual resume. Because the court will consider Phillips' relevant conduct in imposing sentence, the charge to which Phillips has pleaded guilty adequately reflects the seriousness of his actual offense behavior and the plea agreement does not undermine the statutory purposes of sentencing.

## III

██ Phillips suggests in a letter to the court that he should be permitted to with-

---

4. The court has not predetermined that the PSI is correct. Phillips' opportunity to object to the

PSI will be a meaningful one in which his position will be carefully considered.

**50**

draw his plea of guilty if the court concludes it is not bound by the factual resume. Fed.R.Crim.P. 32(d) provides that a court may allow a defendant to withdraw a guilty plea when a motion to withdraw is made prior to sentencing. The standard for deciding the withdrawal issue is whether "for any reasons the granting of the privilege seems fair and just." *United States v. Carr*, 740 F.2d 339, 343 (5th Cir. 1984), *cert. denied*, 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985). In *Carr* the Fifth Circuit set out seven factors to be considered when applying this standard. The court is to evaluate these elements in light of the totality of the circumstances. *Id.* at 344; *Moya*, 730 F.Supp. at 41. The defendant has the burden of proving that withdrawal of the plea is justified. *Carr*, 740 F.2d at 344; *Moya*, 730 F.Supp. at 41.

The present record, however, is insufficient to perform the *Carr* analysis. If Phillips desires to withdraw his guilty plea, he must file the appropriate motion, adequately supported, in advance of sentencing.[5] Absent the filing of such a motion, Phillips will be sentenced on February 16, 1990 at 9:00 a.m.

SO ORDERED.

---

**5.** The court does not infer that such a motion would be timely as measured by the third *Carr* factor. *See generally Moya*, 730 F.Supp. at 42–43.