**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Juan Fidel ALEMAN and Rogelio Hernandez Vela, Defendants-Appellants.**

**No. 78–5452.**

United States Court of Appeals, Fifth Circuit.

April 6, 1979.

Bennie E. Ray, Brownsville, Tex., for Aleman and Vela.

J. A. Canales, U. S. Atty., George A. Kelt, Jr., Asst. U. S. Atty., Houston, Tex., John P. Smith, Asst. U. S. Atty., Brownsville, Tex., James R. Gough, John M. Potter, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before JONES, CLARK and GEE, Circuit Judges.

CHARLES CLARK, Circuit Judge:

On January 31, 1978, a federal grand jury issued a fourteen-count indictment accusing seven persons of participating in the importation and distribution of illicit drugs.

Three counts of the indictment included allegations against both Juan Fidel Aleman and Rogelio Hernandez Vela. Count one asserted that Aleman, Vela, and others had conspired to import heroin, in violation of 21 U.S.C. §§ 952(a) and 963. Count two alleged violations of 21 U.S.C. §§ 841(a)(1) and 846, which proscribe conspiracies to possess heroin with the intent to distribute it. Count eight charged that the defendants had possessed heroin with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Eight counts of the indictment accused Vela of committing various other crimes.[1] After their joint trial, the jury found Vela guilty as charged and convicted Aleman under counts two and eight, but acquitted him of the charges made in count one of the indictment. On the appeals of Aleman and Vela, we affirm.

Aleman urges that the Government failed to present sufficient evidence to convict him of conspiring to possess heroin with the intent to distribute it. This contention necessitates a brief recitation of the evidence presented in the district court.

On January 13, 1978, Agent Alberto Castro of the Drug Enforcement Agency arrested Vela and Reynaldo Ramirez when they sold him approximately twenty ounces of heroin. Eleven days later, DEA Agent Russell Reina met Aleman in McAllen, Texas, to discuss a cocaine purchase. According to Reina's testimony concerning that meeting, Aleman mentioned the unfortunate arrest of Vela and Ramirez and indicated that he and his partner, Marroquin, had attempted to help Vela and Ramirez sell the heroin. Aleman stated that Ramirez gave him a "chunk" of the rock-like heroin to use as a sample for attracting potential customers. At the end of the meeting, Aleman gave Reina approximately an ounce of cocaine.

Ramirez testified that he had given Aleman a small sample of the powdered heroin at Vela's request, but that Aleman was not

a part of the distribution scheme. Ramirez further stated that Aleman did not know where the heroin was located, even though he did know that Ramirez and Vela had some heroin to sell. Vela admitted that Aleman was a frequent visitor at his restaurant, but testified that he had never directed Ramirez to give Aleman a sample of the heroin.

When a defendant attacks the sufficiency of the evidence supporting his criminal conviction, the reviewing court must examine the evidence adduced at trial in the light most favorable to the Government. A jury verdict must stand unless reasonable jurors could not find that the evidence negates every factual hypothesis supporting the defendant's innocence. *United States v. Michel,* 588 F.2d 986 at 993 (5th Cir. 1978); *United States v. Ragano,* 520 F.2d 1191, 1203 n.16 (5th Cir. 1975), *cert. denied,* 427 U.S. 905, 96 S.Ct. 3192, 49 L.Ed.2d 1199 (1976).

When measured against the standards set out above, the evidence here was clearly sufficient to show a conspiracy. Both Ramirez and Reina testified that Aleman had received a sample of the heroin. Ramirez' testimony also established that Aleman knew of the existence of the heroin. Vela stated that Aleman was a frequent visitor at his restaurant. In addition, Reina testified that Aleman admitted that he was a part of the distribution scheme. Ramirez did contradict this portion of Reina's testimony by testifying that Aleman had no part in the plans to distribute the heroin, and Ramirez also stated that the heroin he gave Aleman was powdered rather than rock-like. However, these conflicts in testimony created issues of fact for the jury to decide. If the jury credited Reina's testimony, they could believe that Aleman was an integral part of the distribution scheme.

Aleman asserts that his conspiracy conviction is invalid since the Government

---

1. Counts three, four, five and seven charged violations of 21 U.S.C. § 841(a)(1), which forbids the distribution of cocaine. Counts nine, ten, eleven and fourteen accused Vela of using a telephone to facilitate the commission of a felony, in violation of 21 U.S.C. § 843(b).

failed to prove that he committed an act in furtherance of the conspiracy. This contention is without merit; in prosecutions for conspiracy to possess heroin with intent to distribute under 21 U.S.C. § 846, the Government need not allege or prove that a conspirator committed an overt act in furtherance of the conspiracy. *United States v. Juarez,* 573 F.2d 267, 279 (5th Cir. 1978).

Aleman submits that he cannot be held accountable for possession of the heroin that Vela and Ramirez attempted to sell since the Government did not prove actual possession or constructive possession. The evidence at trial did not establish that Aleman ever had actual possession of the heroin; the Government instead relied on the theory of constructive possession. A defendant has constructive possession of a thing if he has "dominion and control over the item or at least a power to exercise dominion or control." *United States v. Alvarez,* 548 F.2d 542, 544 n.5 (5th Cir. 1977). The proof adduced here meets that standard. It shows that Aleman actually received a sample of the heroin. According to Reina's testimony, Aleman admitted that he had planned to help Vela and Ramirez sell the heroin. The jury could reasonably have inferred from this testimony that Aleman had "a power to exercise dominion and control" over the heroin in order to consummate sales.

Agent Reina testified that Aleman gave him a sample of the cocaine at the end of their meeting in McAllen. After the jury had retired, the judge received a note from the foreman that stated, "Was there a sample of heroin and/or cocaine given by Mr. Aleman to Mr. Reina, and if so, was it admitted into evidence? Please bring to the jury room." The court responded to the inquiry, stating that:

> The evidence from Mr. Reina is that Mr. Aleman gave him a sample of cocaine, not heroin but cocaine, and it was not admitted into evidence here and is not presented into evidence because Mr. Aleman was not indicted for that. That giving of that sample to Mr. Reina was not part of this indictment and that's the

reason that the thing was not introduced into evidence, so it is not here.

The foreman then approached the bench and, with the lawyers listening, had the following conversation with the judge:

> THE FOREMAN: Your Honor, my jury does not want to agree on any of these charges unless there is evidence that in effect the heroin or the cocaine was turned over to Mr. Reina by Mr. Aleman.
> THE COURT: As far as Aleman is concerned, you don't want to—they don't want to convict him unless what?
> THE FOREMAN: Unless there is visual evidence of the heroin or the cocaine.
> MR. RAY [DEFENSE COUNSEL]: There isn't.
> THE COURT: Well, we don't have that. You have heard the evidence, and I will tell them that.

Following this colloquy, the court again spoke to the jury:

> Now, members of the jury, Mr. Hinojosa, your foreman, approached the bench and told me that you members of the jury did not want to find Mr. Aleman guilty unless there was some evidence that he had turned over some, either cocaine or heroin, to Mr. Reina.
> So you have heard the evidence and you all do whatever you please. If those are your feelings, you express them that way. Go upstairs and continue your deliberations. We have nothing except the evidence that's been presented to you here.

The jury then returned to its deliberations.

Aleman asserts that Reina's testimony concerning the transaction was inadmissible since Aleman was tried for dealing in heroin rather than for cocaine dealing. Aleman bases his assertions of error on the rule of law forbidding the introduction of acts extrinsic to a defendant's indictment to show the defendant's bad character. *See* Federal Rule of Evidence 404(b). Aleman contends that the testimony concerning the cocaine transaction established a "wholly separate and independent crime" for the purpose of showing Aleman's bad character.

We reject Aleman's arguments for two reasons. First, the evidence of the cocaine transaction cannot be designated as evidence of acts extrinsic to those for which Aleman was indicted. An act cannot be characterized as an extrinsic act when the evidence concerning that act and the evidence used to prove the crime charged are inextricably intertwined. *See United States v. Calvert,* 523 F.2d 895, 907 (8th Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); 22 C. Wright & K. Graham, Federal Practice and Procedure, § 5239 at 441 (1978). The extrinsic acts rule is based on the fear that the jury will use evidence that the defendant has, at other times, committed bad acts to convict him of the charged offense. Wright & Graham, *supra,* § 5239 at 436 (1978). In the usual case, the "other acts" occurred at different times and under different circumstances from the crime charged. The policies underlying the rule are simply inapplicable when some offenses committed in a single criminal episode become "other acts" because the defendant is indicted for less than all of his actions. If a person breaks into a house, murders the occupants, and steals a television set, the individual offenses do not become "wholly separate and independent crimes" merely because they are made the subjects of separate indictments.

The cocaine transaction objected to here was an integral part of the crucial meeting between Reina and Aleman. Aleman's admissions made during that meeting are the single most persuasive piece of evidence against Aleman in this heroin prosecution. Reina's testimony would have been incomplete and confusing had he not been able to explain how, eleven days after Ramirez and Vela had been arrested for heroin dealing, he and Aleman came to discuss Aleman's participation with Ramirez and Vela in the distribution scheme. It would have detracted from the search for truth to require that Reina attempt to testify without mentioning the purpose of the meeting and what occurred in it.[2]

Second, even if the evidence of the cocaine transaction should be treated as "other acts" evidence, its admission is permissible under the tests set out in *United States v. Beechum,* 582 F.2d 898 (5th Cir. 1979) (en banc). In *Beechum,* we held that evidence of extrinsic acts could be admitted if, as required by Federal Rule of Evidence 404(b), the evidence is relevant to an issue other than the defendant's character, and if, as required by Rule 403, the probative value of the evidence is not substantially outweighed by unfair prejudice arising from its admission.[3]

The admission of Reina's testimony here was proper under *Beechum's* interpretation of Rule 404(b). The *Beechum* court expressly sanctioned the use of other acts evidence "if the uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other.'" *Beechum, supra,* 582 F.2d at 911 n.15. *See also United States v. Wilson,* 578 F.2d 67, 72–73 (5th Cir. 1978); *United States v. Blewitt,* 538 F.2d 1099, 1100 (5th Cir. 1976), *cert. denied,* 429 U.S. 1026, 97 S.Ct. 650, 50 L.Ed.2d 629 (1977); *United States v. Bloom,* 538 F.2d 704, 707–08 (5th Cir. 1976); *Nunez v. United States,* 370 F.2d 538, 539 (5th Cir. 1967). Reina's testimony about the cocaine transaction here

2. We note that if the government had indicted and tried Aleman in a single trial for both the heroin offense and the cocaine transaction, Aleman's motion to sever his trial on the crimes could have been denied. Federal Rule of Criminal Procedure 8(a) permits joinder when the offenses charged "are based on the same act or transaction." Federal Rule 14 provides that a motion to sever may be granted if "a defendant . . . is prejudiced by a joinder of offenses." The offenses at issue here are clearly "based on the same act or transaction," and, as we discuss below, the prejudice arising from a joint trial would have been slight. *See United States v. Park,* 531 F.2d 754, 760–63 (5th Cir. 1976), *United States v. Marionneaux,* 514 F.2d 1244, 1248 (5th Cir. 1975).

3. Under the guidelines established in *Beechum,* this probity-prejudice determination should be made by the trial court. Since Aleman did not object to the admission of the extrinsic crime evidence, the district court did not decide the issue.

was not admitted on the issue of Aleman's character, but was introduced because it "formed an integral and natural part of the agent's accounts of the circumstances surrounding the offenses for which [the defendant] was indicted." *Bloom, supra,* 538 F.2d at 707.

Having found *Beechum's* Rule 404(b) test satisfied, we now turn to an examination of the challenged evidence in light of the other requirement of *Beechum* : that the evidence must satisfy the requirements of Federal Rule of Evidence 403, which provides,

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We have already noted the probative value of the challenged evidence. It was the setting for the crucial meeting between Reina and Aleman. Moreover, the evidence did not present problems of "confusion of the issues" or "misleading the jury"; the jury needed the evidence to fill out Agent Reina's testimony. Undue delay, waste of time, or needless presentation of cumulative evidence were not a problem since the evidence was taken from one of the main witnesses in the trial, did not require much time to present, and was not repetitive. In addition, the prejudice arising from the admission of the evidence was slight. The judge carefully instructed the jury concerning the proper use of the evidence. The government presented substantial evidence of Aleman's guilt in addition to the challenged evidence.

Vela asserts that the prosecutor's statement concerning one of Vela's previous marijuana convictions requires reversal of his conviction since it encouraged the jury to consider the prior conviction as evidence of his character. During the trial Vela testified that he had been convicted of marijuana dealings. This testimony was part of Vela's attempt to establish an entrapment defense; he contended that govern-

ment agents, knowing of his previous conviction, had induced him to commit the charged crimes. The government prosecutor mentioned the previous conviction in his closing argument.

Vela did not object to the prosecutor's statement. Thus any error must be "plain" to be material on appeal. As we recently held in *United States v. Cook,* 592 F.2d 877 at 879 (5th Cir. 1979):

In order for an error to be within the classification of "plain" it must be not only obvious and substantial but also so basic and so prejudicial that the resulting trial lacks the fundamental elements of justice. The "plain error" concept confers upon a reviewing court a "residuum of power which, withheld from the trial participants' usual control over preservation of error, protects not only their immediate interests but also the criminal justice process itself." *United States v. Johnson,* 585 F.2d 119, 127 (5th Cir. 1978).

Vela urges that the admission of the prosecutor's statement satisfies the plain error test, *citing United States v. Garber,* 471 F.2d 212 (5th Cir. 1972). In *Garber,* the prosecutor introduced evidence of previous convictions to impeach the defendant's testimony and then dwelled on the extrinsic offense in his closing arguments. We held that the prosecutor's statements were plain error; the government could not introduce the extrinsic crime for impeachment and then make use of it as character evidence in the closing argument.

■ *Garber* is inapposite here. Vela himself introduced the evidence of the prior conviction to prove his entrapment defense. After Vela took the position that he committed the acts charged because of governmental coercion, it was not fundamentally unjust for the prosecutor to remind the jury that Vela had testified that he stood before them with a prior record of marijuana dealings. Appellate parsing of the prosecutor's argument is not necessary to protect either the immediate interests of the defendant or the criminal justice process itself. *Johnson, supra,* 585 F.2d at 127.

The convictions of Juan Fidel Aleman and Rogelio Hernandez Vela are

AFFIRMED.