**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jan Leslie COSTA, Defendant-Appellant.**

**No. 81–7999
Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 22, 1982.

Juan P. Robertson, Los Angeles, Cal., Douglas L. Williams, Miami, Fla., Terrence A. Roden, Los Angeles, Cal., for defendant-appellant.

Craig A. Gillen, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before RONEY, VANCE and ANDERSON, Circuit Judges.

PER CURIAM:

Defendant appeals his conviction for possession of cocaine with intent to distribute and conspiracy to possess cocaine with intent to distribute. 21 U.S.C.A. §§ 841(a)(1), 846. He argues the trial court committed a variety of evidentiary errors: admitting evidence of extrinsic offenses, admitting evidence obtained pursuant to an allegedly unlawful arrest, admitting evidence without proper identification or foundation, and permitting the jury to use evidence not admitted. Costa also contends he was denied effective assistance of counsel, a point generally not considered on direct appeal. Finding the record sufficient to consider the ineffective assistance of counsel claim on this appeal, however, and discerning no reversible error, we affirm on all issues argued by Costa.

The Government's evidence consisted mainly of testimony from Sherell Cole and Ted Campbell. They had been indicted with Costa and had pleaded guilty. Cole sold an ounce of cocaine, obtained from Campbell, to an undercover agent of the Drug Enforcement Agency (DEA) early in July 1981. The agent pressed Cole about obtaining a kilogram of cocaine, and Cole asked Campbell whether it could be procured. After unsuccessfully attempting to acquire the kilogram from another source, Campbell reached Costa at the Guest Quarters hotel in Atlanta and learned Costa had a kilogram he wished to sell. After a series of negotiations, first a sample and then the entire kilogram were delivered by Campbell to Cole to the agent. Upon Cole's arrest she named Campbell as her source, and he was then arrested.

Campbell cooperated with the D.E.A. naming Costa as his source. He agreed to record telephone conversations with Costa, which occurred between July 27–29, 1981. During the course of these conversations, Costa became frustrated over Campbell's failure to fly to Miami to pay him for the cocaine. Costa left his home in Miami and flew to Atlanta where he was arrested on July 29, 1981.

### I. *Evidence of Extrinsic Offenses*

■ The trial court did not abuse its discretion in allowing Campbell to testify con-

cerning his prior relationship with Costa, even though his testimony showed Costa previously had dealt in cocaine. Costa argues this violated Fed.R.Evid. 404(b) which prohibits evidence of offenses or illegal acts extrinsic to a defendant's indictment to show the defendant's bad character.

The relationship between Costa and Campbell, however, was not extrinsic to the Government's charge. Campbell testified as to the circumstances in which he came to know Costa as a dealer in cocaine to show why he could expect Costa to provide him with a kilogram. The evidence concerning the prior acts and that used to prove the crime charged were inextricably intertwined. *United States v. Aleman,* 592 F.2d 881, 885 (5th Cir. 1979) [1]. Therefore, Campbell's testimony about Costa's previous dealing in cocaine was necessary because it formed an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted. *Id.* at 886; *United States v. Bloom,* 538 F.2d 704, 707 (5th Cir. 1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 814, 50 L.Ed.2d 792 (1977).

The trial court's sensitivity to the problems arising under Rule 404(b) is demonstrated by the transcript of the hearing regarding Campbell's testimony and by the fact that the court prohibited introduction of a prior state drug conviction during the prosecution's case-in-chief.

### II. *Lawfulness of Arrest*

■ We reject Costa's contention that his warrantless arrest at the Atlanta airport was in violation of *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). *Payton* pertains to arrests in a home. The argument is that the Government enticed Costa out of his home so that the *Payton* principles should apply. The defendant cites no authority to support his proposition, and the facts do not support his argument. It was Costa's desire to secure

payment for the cocaine which brought him to the Atlanta airport, not Government enticement. In any event, we find this case is governed by *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), which held warrantless arrests based on probable cause and made in a public place are permissible under the Fourth Amendment.

### III. *Evidence Identification*

■ Defendant contends that documentary evidence, namely a hotel guest check and charge card receipt and a plane ticket, was received into evidence without proper identification. The prosecution asked the arresting agent to identify the objects seized when Costa was arrested, and he did so. This was sufficient. *United States v. Mazyak,* 650 F.2d 788, 791–92 (5th Cir. 1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982). It was unnecessary to identify the evidence in the manner that would have been required had it not been taken from Costa at the time of arrest.

### IV. *Foundation for Expert Testimony*

■ The trial court properly admitted testimony by a D.E.A. agent regarding the street value and purity of the cocaine. The trial judge has broad discretion in admitting or excluding expert testimony, and his action is to be sustained unless manifestly erroneous. *United States v. Johnson,* 575 F.2d 1347, 1360 (5th Cir. 1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1979). In view of the agent's experience as an undercover agent, the failure to qualify him could not have been prejudicial. *United States v. Beaver,* 524 F.2d 963 (5th Cir. 1975), *cert. denied,* 425 U.S. 905, 96 S.Ct. 1498, 47 L.Ed.2d 756 (1976).

■ Evidence of quality and quantity of the drugs is relevant to an inference of

---

1. The Eleventh Circuit, in the en banc decision of *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981), adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.

intent to distribute. *United States v. Polite,* 489 F.2d 679 (5th Cir.), *cert. denied,* 419 U.S. 854, 95 S.Ct. 99, 42 L.Ed.2d 87 (1974). Intent to distribute was an element of both counts with which defendant was charged, notwithstanding Costa's assertions to the contrary.

### V. *Government's Closing Argument*

During his closing argument, the prosecutor made the following statement about the testimony by the D.E.A. agent discussed above:

> And that's the reason—and to show you the importance and how the whole drug system filters down, this is the reason why we had the agent come over and break down 90 percent of 957 grams.

> By the time that the people on the street are sticking that cocaine at ten percent or 11 percent in this case into their bodies then the street value of that cocaine is between 765,000 to 1.1 million dollars in this one deal, this one kilogram of cocaine that Mr. Costa had, 90 percent proof.

Costa contends these comments were inflammatory and designed to discredit him by alluding to the problem of drug abuse in the community and by associating him with offenses other than the one with which he was charged.

■ These statements were not necessarily made for the purpose of connecting this particular defendant with the general problem of drug abuse. *See United States v. Leaman,* 546 F.2d 148 (5th Cir.), *cert. denied,* 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). Rather, they were an attempt to draw together the evidence regarding purity and value to demonstrate Costa's intent and place in the distribution of cocaine. The reference to the physical use of cocaine, while better left out of the comments, did not amount to reversible error.

### VI. *Admissibility of Transcripts*

■ Costa asserts the trial court erred in allowing a transcript of tape recorded conversations between Campbell and Costa to be sent out with the jury during its deliberations when it had not been formally offered into evidence. It is clear from the record this was an inadvertent error. The tape from which the transcript was made, Exhibit 3, was played for the jury and was received into evidence. The court clearly instructed the jury regarding use of the transcript as an aid. *See McCormick on Evidence,* § 184 at 394 (1954). Costa has delineated no prejudice from the technical error, and we deem it to be harmless. *See United States v. Angelilli,* 660 F.2d 23, 30 n. 6 (2d Cir. 1981), *cert. denied,* 455 U.S. 910, 945, 102 S.Ct. 1258, 1442, 71 L.Ed.2d 449, 657 (1982) (harmless error for jury to hear during deliberations a recording not admitted into evidence since it was copy of tape already admitted into evidence). When a jury considers evidence submitted to it, no reversible error occurs just because the evidence was not formally marked into evidence. *Cf. United States v. Shafer,* 445 F.2d 579, 582 (7th Cir.), *cert. denied,* 404 U.S. 986, 92 S.Ct. 448, 30 L.Ed.2d 370 (1971) (no reversible error committed when gun not formally introduced into evidence was given to jury for use in deliberations when gun was marked as exhibit and identified, proper foundation was laid for its admission, and witnesses were subject to cross examination concerning it).

Costa further argues that it was improper for the jury to have the use of the transcripts during its deliberations, even though they were utilized properly during the trial itself to aid the jury in understanding the tapes. He claims the jury must have used the transcripts and not the tapes in reaching a decision because there is no indication in the record a tape recorder was furnished to the jury. According to Costa use of these transcripts could not help but prejudice the jury in its deliberations.

■ Costa has not questioned the accuracy of the transcripts in either the trial court or this appeal. This Court has recognized previously that transcripts are evi-

dence admissible to aid the jury as it listens to a tape. *United States v. Onori,* 535 F.2d 938 (5th Cir. 1976). The trial judge so instructed the jury. We have no way of knowing what use, if any, the jury made of the transcripts nor does Costa. Absent anything more specific than a presumption that the transcripts were used by the jury and a generalized claim that the jury must have been prejudiced, we find no error in the transcripts being in the jury room.

## VII.  *Ineffective Assistance of Counsel*

Costa's final contention is that he was denied his Sixth Amendment right to effective assistance of counsel. His argument is based in large measure on his trial counsel's failure to object to the district court's action in connection with the errors asserted on appeal, and counsel's failure to make an opening statement, to object to leading questions, to poll the jury, and to call defendant's mother as a witness who would corroborate Costa's theory that he was involved in a legitimate business.

■ Normally, claims of ineffective assistance of counsel will not be considered on a direct criminal appeal. *United States v. Barham,* 666 F.2d 521 (11th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2015, 72 L.Ed.2d 470 (1982). We have held, however, that such claims may be considered if the record is developed sufficiently. *See United States v. Phillips,* 664 F.2d 971, 1040 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). Such is the case here.

■ The standard for constitutionally effective assistance of counsel is not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance. *Adams v. Balkcom,* 688 F.2d 734 (11th Cir. 1982); *Herring v. Estelle,* 491 F.2d 125, 127 (5th Cir. 1974) (quoting *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir. 1960), *adhered to in pertinent part on rehearing en banc,* 289 F.2d 928 (5th

Cir.), *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). We look at the totality of the circumstances in the entire record. *See Washington v. Estelle,* 648 F.2d 276, 279 (5th Cir.), *cert. denied,* 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981). A defendant claiming ineffective assistance of counsel must establish that his attorney's alleged failure resulted in some degree of prejudice to him. *Adams v. Balkcom,* 688 F.2d at 738–39 (1982).

■ Costa's challenges to the lawfulness of his arrest and to the admission of testimony and pieces of evidence have been considered here to be of no merit, without resort to the plain error rule that is applied when no objection is made at trial. *United States v. Fowler,* 605 F.2d 181, 184 (5th Cir. 1979), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785 (1980). The invalidity of each objection shows that failure to object was not a prejudicial default in representation. Counsel may have known, as well as we, that such objections would not be valid. We have previously held that the failure to object to admissible evidence does not constitute ineffective assistance of counsel. *Lovett v. Florida,* 627 F.2d 706, 709 (5th Cir. 1980). *See Babers v. Estelle,* 616 F.2d 178 (5th Cir.), *cert. denied,* 449 U.S. 985, 101 S.Ct. 404, 66 L.Ed.2d 248 (1980).

■ Regarding counsel's failure to object to leading questions, we have reviewed the record and determined that several dealt with preliminary matters. The mode and order of interrogation is within the judge's control. The Federal Rules of Evidence allow the use of leading questions "as may be necessary to develop ... testimony." Fed.R.Evid. 611(c). All the questions cited fall well within this category. Costa fails to demonstrate any prejudice resulting from his attorney's failure to object.

■ Costa argues that his counsel's failure to poll the jury amounted to ineffective assistance. Since there is nothing in the

record to indicate any juror was uncertain of the verdict, counsel's failure to request a poll does not fall outside the range of competence expected of attorneys in criminal cases. *See United States v. Gerardi,* 586 F.2d 896 (1st Cir. 1978).

▮▮▮ Costa claims his attorney should have called his mother as a witness to testify that he was involved in a legitimate business. "Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy...." *United States v. Guerra,* 628 F.2d 410 (5th Cir. 1980), *cert. denied,* 450 U.S. 934, 101 S.Ct. 1398, 67 L.Ed.2d 369 (1981). Counsel will not be deemed to be constitutionally deficient because of tactical decisions. 628 F.2d at 413. Costa's mother was not a witness to any acts relating to the crime. Any testimony by her that Costa was engaged in a lawful business would not be particularly relevant to the issue of whether he was involved in the unlawful acts shown by the evidence here. Counsel cannot be faulted for not calling her as a witness.

▮▮ Counsel's decision not to make an opening statement falls within the realm of a strategy decision that occurs frequently enough to make it improper to say the strategy was ill chosen. The purpose of an opening statement is to outline the evidence the party intends to present, and counsel had decided to present Costa's case through cross examination.

Costa fails to demonstrate either default by his counsel or that any alleged default resulted in prejudice to his case. We hold that the actions of counsel in this case were not constitutionally inadequate.

AFFIRMED.