10 F.3d 808
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Peter BERTUGLIA, aka Peter Robert Bertuglia,
Defendant-Appellant.
 No. 92-10668.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 2, 1993.
Decided Nov. 15, 1993.
 
 1
 Before: D.W. NELSON and NORRIS, Circuit Judges; TANNER, District Judge.*
 
 
 2
 MEMORANDUM**
 
 OVERVIEW
 
 3
 Peter Robert Bertuglia ("Bertuglia") appeals from his convictions for conspiracy to import marijuana, illegal importation of a controlled substance, and smuggling a controlled substance. We reverse the conviction because there was insufficient evidence to convict.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 4
 On February 11, 1990, a package addressed to Esteve Hildenbrant, sent from a "Marlo D. White"[1] at a nonexistent mail box at Clark Air Force Base in the Philippines, arrived at the United States Customs Mail Facility in Oakland, California. The Customs Service declaration label identified the contents of the package as a wooden beer barrel with mugs. A Mail Technician, suspicious of its contents, selected this package for inspection and discovered that it contained a plastic container with approximately five kilograms of marijuana. The package and its contents were forwarded to the Customs Office in Las Vegas, Nevada.
 
 
 5
 On March 12, 1990, United States Postal Inspection Service agents arranged a controlled delivery of the parcel to the residence of Steve Hildenbrand ("Hildenbrand"). Hildenbrand was subsequently detained by police officers and agents. During a consensual search of Hildenbrand's residence, a Customs Agent discovered two letters written by Bertuglia to Hildenbrand. The letters detailed a scheme in which Bertuglia and a person named "John" would send parcels of Philippine marijuana to Hildenbrand via the military and U.S. mail services. Bertuglia noted that the parcels would be marked as wood products, since such products usually do not attract the attention of Customs officials. Additionally, agents seized a telephone bill showing two collect calls to Hildenbrand from the Philippines and several Express Mail receipts from Hildenbrand to Bertuglia at Clark Air Force Base.
 
 
 6
 The Air Force Office of Special Investigations ("OSI") in the Philippines was notified about the controlled mail delivery. OSI Agent David Grantham ("Grantham"), who headed the investigation, determined that Bertuglia had been assigned to Clark Air Force Base after a transfer from Korea.
 
 
 7
 On March 13, 1990, a search of Bertuglia's residence, person, and vehicle was authorized based upon Grantham's affidavit. Thereafter, Grantham interviewed Bertuglia at the base OSI office. Bertuglia denied sending the package containing marijuana to Hildenbrand. Following the interview, Bertuglia consented to a search of his person, his vehicle, and his residence. However, after the search of his person was conducted, Bertuglia withdrew his consent to search his vehicle and residence.
 
 
 8
 A federal grand jury indicted Hildenbrand on March 29, 1990, for unlawful importation of a controlled substance in violation of 21 U.S.C. Sec. 952, and aiding and abetting in violation of 18 U.S.C. Sec. 2. A superseding indictment, which alleged additional violations of conspiracy to import and smuggling of a controlled substance, 18 U.S.C. Secs. 371 and 545, was filed against Bertuglia and Hildenbrand on August 30, 1990. On January 31, 1991, the federal grand jury returned a second superseding indictment[2] which reduced the time period for the conspiracy to "[o]n or about and between January 1, 1989, and March 15, 1990." Bertuglia was tried alone, and a jury convicted him on all counts.
 
 ANALYSIS
 
 9
 The panel reviews "a district court's decision to permit the Government to introduce evidence of a defendant's other crimes pursuant to Fed.R.Evid. 404(b) for an abuse of discretion." United States v. Vaccaro, 816 F.2d 443, 452 (9th Cir.), cert. denied, 484 U.S. 928, (1987). Whether certain conduct constitutes "other crimes" is a question of law reviewed de novo. United States v. Hill, 953 F.2d 452, 455 (9th Cir.1991).
 
 I. Admissibility of Evidence
 
 10
 The district court denied Bertuglia's in limine motion and admitted the two letters from Bertuglia to Hildenbrand into evidence under Fed.R.Evid. 404(b). Fed.R.Evid. 404(b) states:
 
 
 11
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 12
 Evidence must satisfy four requirements to be properly admitted under Rule 404(b): "(1) it must prove a material element of the offense for which the defendant is now charged; (2) in certain cases, the prior conduct must be similar to the charged conduct; (3) proof of the prior conduct must be based upon sufficient evidence; and (4) the prior conduct must not be too remote in time." United States v. Arambula-Ruiz, 987 F.2d 599, 602 (9th Cir.1993).
 
 
 13
 Bertuglia argues that the two 1985 letters should not have been admitted under Fed.R.Evid. 404(b) for two reasons. First, the letters were inextricably intertwined with the crime charged. Second, although the two letters were direct evidence of the crimes charged, they were inadmissible because they fell outside of the narrow time frame (1989-90) set forth in the indictment.
 
 
 14
 In United States v. Soliman, 813 F.2d 277 (9th Cir.1987), this circuit held that "[e]vidence should not be treated as 'other crimes' evidence when the evidence concerning the ['other'] act and the evidence concerning the crime charged are inextricably intertwined." Id. at 279 (citing United States v. Aleman, 592 F.2d 881, 885 (5th Cir.1979) (emphasis added). Soliman makes it clear that evidence is either "other crimes" evidence or inextricably intertwined direct evidence, but not both.[3] Id. at 279. "[T]he policies underlying [Rule 404(b) ] are simply inapplicable when some offenses committed in a single criminal episode become 'other acts' because the defendant is indicted for less than all of his actions." Id. Similarly, the Fifth Circuit explained that "[i]f a person breaks into a house, murders the occupants, and steals a television set, the individual offenses do not become 'wholly separate and independent crimes' merely because they are made the subjects of separate indictments." Aleman, 592 F.2d at 885.
 
 
 15
 The facts of this case strongly suggest that the two letters were an integral part of the overall conspiracy and should have been characterized as direct evidence of the crime rather than 404(b) "other acts" evidence. Although the government claims to have used the letters for 404(b) purposes, the trial transcript suggests otherwise. For example, the prosecutor stated in closing argument that Bertuglia "did exactly what he proposed to do in these two letters that he wrote to Mr. Hildenbrand, his friend." Similarly, the prosecutor noted that Bertuglia "said exactly what we've shown has happened. We have shown through the letters, through the testimony, and through the exhibits that the defendant ... committed the crime of conspiracy...." In its brief, the government continues to argue that Bertuglia "was found guilty because he wrote letters detailing a plan to smuggle marijuana and then did exactly as he said he would." Government Brief at 20 (emphasis added). The district court, in comparing the letters to the charged act, stated, "Here I think it's exactly the same acts."
 
 
 16
 Moreover, the two letters constitute the strongest proof of an agreement between Bertuglia and Hildenbrand to import marijuana. The government took full advantage of the letters in arguing that such an agreement had been reached. Without this proof, the government would have been limited to the weak inference that since marijuana-filled packages usually are not sent without prior agreement between the sender and the receiver, this particular package was likely sent per an agreement. Thus, the letters were used as direct evidence of the agreement and conspiracy.
 
 
 17
 The problem with using the letters as direct evidence of the conspiracy, however, is that they were not written within the time frame specified in the indictment. The indictment charged a conspiracy occurring, "[o]n or about and between January 1, 1989, and March 15, 1990...." The two letters, however, were written in 1985. Thus, the government's decision to limit the time frame of the conspiracy effectively eliminates the use of the two letters as direct evidence of Bertuglia's intent and knowledge during the charged conspiracy.
 
 
 18
 The government argues that it could not have enlarged the indictment's time frame in good faith to include the letters. However, the government decided to charge the conspiracy as beginning in 1989, and it cannot escape the evidentiary ramifications of that choice. To allow the government essentially to underindict by excluding the letters from the charged conspiracy and then introduce the letters under 404(b) is improper. Soliman, 813 F.2d at 279.
 
 
 19
 The government's decision to exclude the two letters from the time frame of the charged conspiracy makes no difference in how the letters are to be viewed: the letters were still part of one overall scheme.[4] The government relied on a theory that the letters "set out the intent to engage in a long lasting relationship, [and] engage in a long lasting commercial endeavor to import marijuana." Nothing in the record indicates the existence of more than one conspiracy or agreement to import marijuana. Thus, Bertuglia is correct that the letters are linked to and essentially part of the same scheme as the delivery of the marijuana package.
 
 
 20
 Therefore, because the district court erred by admitting the two letters into evidence as 404(b) evidence, and because the limited time frame of the indictment precluded the admission of the letters as direct evidence, the district court abused its discretion.
 
 II. Sufficiency of the Evidence
 
 21
 There is sufficient evidence to support a conviction if, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "An appellate reversal of a conviction on the basis of insufficiency of the evidence has the same effect as a judgment of acquittal: the Double Jeopardy Clause precludes retrial." United States v. Bibbero, 749 F.2d 581, 586 (9th Cir.1984), cert. denied, 471 U.S. 1103 (1985).
 
 
 22
 Because 1985 letters were inadmissible either as 404(b) evidence or as direct evidence for the reasons previously stated, then no rational trier of fact could have found the elements of the crimes charged. There was no other evidence introduced at trial to prove intent, knowledge, or identity. The parcels, the Express Mail receipts, and the phone conversations only suggest that Bertuglia and Hildenbrand had contact. Without the "light" shed by the letters, there is absolutely nothing which suggests that Bertuglia's actions were illegal. Such evidence is not by itself probative of any criminal behavior.
 
 CONCLUSION
 
 23
 We reverse the district court's denial of Bertuglia's motion to exclude evidence occurring prior to the time frame set forth in the indictment. As a result, the evidence presented at trial was insufficient to convict Bertuglia.
 
 
 24
 Reversed.
 
 
 
 *
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This probably was a fictitious name
 
 
 [2]
 All references to the indictment will hereafter refer to the second superseding indictment
 
 
 [3]
 Although the government argues that inextricably intertwined evidence can be admitted under 404(b), the cases it relies on do not support this contention. See United States v. Williams, 989 F.2d 1061, 1070 (9th Cir.1993) (court admitted contested evidence as direct evidence, not as 404(b) evidence); United States v. Vaccaro, 816 F.2d 443, 452 (9th Cir.), cert. denied, 484 U.S. 928 (1987) (court admitted evidence as direct evidence--only alternatively would it have met the 404(b) test). Both United States v. Miller, 688 F.2d 652 (9th Cir.1982), and United States v. Beathune, 527 F.2d 696 (10th Cir.1975), cert. denied, 425 U.S. 996 (1976), were decided before Soliman 's inextricably intertwined rule, and thus are not applicable
 
 
 [4]
 The government contends that the letters also described other acts between Bertuglia and a third party. Specifically, the government claims that the letters are admissible because they contain evidence of Bertuglia's purchase of drugs in connection with the conspiracy, which proves his willingness to follow through with the scheme. Again, these acts appear to be in concert with the overall conspiracy and are thus intertwined