[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUL 07, 2006
THOMAS K. KAHN
CLERK

No. 05-14859
Non-Argument Calendar
_____

D. C. Docket No. 05-00009-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES MARVIN COX, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(July 7, 2006)**

Before CARNES, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

James Marvin Cox, III, appeals his convictions, imposed pursuant to a jury

verdict, and sentences for possession of a firearm by a convicted felon, in violation

of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and aiding and abetting the making of

false statements to purchase a firearm, in violation of 18 U.S.C. § 922(a)(6). On appeal, Cox argues that the district court erred by (1) admitting evidence of marijuana (in an amount and manner consistent with an intent to distribute), digital scales, plastic baggies, and $6,225 in cash, all of which was found in his bedroom, as "inextricably intertwined" with his possession of a firearm, and (2) enhancing his offense level by four levels, pursuant to U.S.S.G. § 2K2.1(b)(5), based on his possession of a firearm in connection with another felony offense (possession of marijuana with intent to distribute).[1] After careful review, we affirm.

## I.

We review a district court's evidentiary rulings for a clear abuse of discretion. See United States v. Drury, 396 F.3d 1303, 1315 (11th Cir.), cert. denied, 126 S. Ct. 336 (2005). "[W]hen employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir.) (en banc), cert. denied, 544 U.S. 1063 (2005). "Evidentiary errors do not constitute grounds for reversal unless there is a

---

[1]We find no Sixth Amendment violation based on United States v. Booker, 543 U.S. 220 (2005), as nothing in Booker prevents the district court from making factual findings by a preponderance of the evidence, so long as the court applies the Guidelines in an advisory fashion, as the district court expressly stated it did here. See United States v. Chau, 426 F.3d 1318, 1324 (11th Cir. 2005).

reasonable likelihood that they affected the defendant's substantial rights; where an error had no substantial influence on the outcome, and sufficient evidence uninfected by the error supports the verdict, reversal is not warranted." Drury, 396 F.3d at 1315 (internal quotation marks omitted).

As for Cox's sentencing argument, after United States v. Booker, 543 U.S. 220 (2005), the district court remains obligated to consult and correctly calculate the Guidelines, although they now are only advisory. United States v. McVay, 447 F.3d 1348, 1353 (11th Cir. 2006). After Booker, we continue to review the district court's application of the Guidelines as we did pre-Booker. United States v. Ellis, 419 F.3d 1189, 1192 (11th Cir. 2005). Thus, a challenge to the application of the Sentencing Guidelines is a mixed question of law and fact. United States v. Anderson, 326 F.3d 1319, 1326 (11th Cir. 2003). We review the district court's findings of fact for clear error and its application of the Guidelines to those facts de novo. Id.

## II.

The relevant facts are these. On February 2, 2005, Cox was indicted for aiding and abetting Timothy Shawn Yancey in the making of false statements to purchase a firearm, in violation of 18 U.S.C. § 922(a)(6) (Count 1), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and

924(a)(2) (Count 2). Cox stipulated that he was previously convicted of a felony, and the firearm was shipped in interstate commerce.

Before trial, the government advised the court that it planned to introduce evidence that was found in Cox's bedroom, consisting of 55 grams of marijuana, plastic baggies, digital scales, and $6,225 in cash, for the purposes of establishing Cox's motive for possessing the firearm and showing that possession of the firearm was not the result of a mistake or accident. The government's theory was that, as a drug dealer, Cox possessed the firearm for protection. Alternatively, the government asserted the evidence was "inextricably intertwined" with Cox's gun possession.

The district court ruled that the evidence was admissible because it was relevant to support the government's theory that Cox obtained the gun for his own protection, particularly in light of the amount of cash that was found in his bedroom. The court concluded that the probative value of the evidence substantially outweighed any danger of unfair prejudice.

In another pre-trial motion, Cox sought to cross-examine his co-defendant, Timothy Shawn Yancey, regarding Yancey's testimony in a prior criminal case involving Garrett Ogle. Cox stated the purpose of the cross-examination was to show that it was Yancey who possessed the gun because of his own fear that after

4

he testified against Ogle, Ogle would harm him upon being released from jail. The district court ruled that evidence regarding the facts of the other case could not be introduced, but that Cox could cross-examine Yancey and ask him whether he was afraid of Ogle.

At trial, Matthew Sutton, a former police officer and owner of the Wilmington Armory Gun Store in Savannah, Georgia, testified that on December 30, 2004, Cox, Yancey, and an unknown female (later identified as Cox's girlfriend, Danielle Gentry) examined several rifles at his store. Cox and Yancey returned several hours later and examined an Armalite AR 180-B, .223 caliber semiautomatic rifle. Cox asked Sutton some questions about the gun, including how to clean it and how to remove the magazine. Yancey subsequently purchased the gun with cash after filling out the Georgia firearms consent form.

Later that day, Diane Gentry, the mother of Cox's teenaged girlfriend, Danielle, found a receipt for a gun and Yancey's birth certificate in her daughter's car. Based on her concern about teenagers in possession of weapons, she took the receipt and birth certificate to the local police station. Based on Gentry's police report and the fact that Cox was a convicted felon, on January 4, 2005, the Savannah-Chatham County Police Department contacted Special Agent Louis Valoze of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF")

5

concerning a possible straw purchase by a convicted felon. The ATF subsequently initiated an investigation into the December 30th gun purchase.

Yancey testified against Cox and described the gun purchase. At some point, while inside of the store, Cox told Yancey that he wanted the gun "in case he ever needed protection." Although Yancey signed the firearm transaction record form indicating that he was the actual purchaser of the gun, he testified that the gun was for Cox, and Cox paid for it. After purchasing the gun, Yancey put it in the trunk of Danielle Gentry's car, and they drove to an apartment belonging to Susan Reese, the mother of one of their friends, Sarah Reese. Once at the apartment, they put the gun under Sarah's bed. Cox subsequently wanted to bring the gun to his house because he was concerned that Susan Reese would not approve of having the gun in her apartment.

One or two days after purchasing the gun, Yancey and Cox put the gun in the trunk of Susan Reese's car, unbeknownst to her, and she drove them to Cox's house. Cox carried the gun inside his house and took it to the attic while Yancey waited downstairs. A week after Cox was arrested, on January 10, 2005, Yancey visited Cox in jail, and Cox told him that the gun was in his (Cox's) attic, hidden beneath some insulation under a window. Cox asked Yancey to contact his parents to try to get the weapon out of their house. Yancey later revealed the location of

6

the weapon to Special Agent Valoze and accompanied him to Cox's house, but they were unable to find the gun.

Agent Todd Desautels of the Savannah Counter Narcotics Team testified that he lived across the street from Cox's mother and stepfather, the Elmgrens. On the evening of January 2, 2005, Desauntels was in his upstairs study when he heard a vehicle pull up to the Elmgrens' home. He looked out the window and saw Cox remove a white box from the trunk of a Volvo and walk toward the front door. Another young man, approximately Cox's age, also got out of the vehicle. The box, which appeared to have something weighty in it, was white with blue writing on one side and was approximately 4 ½ feet long, 12 inches wide, and 4 inches deep. The box resembled Government's Exhibit 4, a shipment box for an Armalite AR 180-B semiautomatic rifle.

Officer Tiffany Wall of the Tybee Island Police Department testified that she lived with Desauntels, and on January 2, 2005, she also witnessed Cox unloading a white box from the trunk of a black Volvo. She described the box as four feet long, six to seven inches wide, and three to four inches deep, and stated that it resembled Government's Exhibit 4.

Special Agent Valoze testified that ATF agents executed a search warrant of the Elmgrens' home on January 7, 2005, and arrested Cox, but did not find a

weapon. Although they searched the attic, they did not look in the insulation. On January 18, 2005, during his interview of Yancey, Special Agent Valoze learned that Cox had placed the gun beneath some insulation underneath a window in the attic. When ATF agents returned to the Elmgrens' house, they again were unable to find the gun. Special Agent Valoze met with Yancey for a second time, on February 2, 2005, at which point Yancey said that he told Cox's mother where the gun was. Jail records revealed that Cox's mother visited Cox in jail the day before Special Agent Valoze's January 18th interview of Yancey.

Finally, Sergeant Gregory S. Ernst of the Savannah-Chatham County Police Department testified that the following items were found in Cox's bedroom during the search on January 7, 2005: (1) marijuana residue on the floor; (2) a shoe box with marijuana residue and digital scales; (3) a paper bag with marijuana residue; (4) a box in the center of the room with plastic baggies and marijuana; (5) a VCR filled with marijuana; and (6) $6,225 in cash in various denominations. In all, 55 grams of marijuana were seized from Cox's bedroom.

After presenting his defense, during which he asserted the theory that it was Yancey's idea to purchase a gun and, in fact, that the firearm belonged to Yancey, Cox requested a limiting instruction on the drug evidence. The district court instructed the jury as follows:

During the course of the trial, you have heard of evidence of marijuana and other items having been found in the defendant's room. The defendant is not on trial for a drug offense. I charge you that you shall only consider the evidence for the limited purpose of determining whether the defendant possessed a firearm, and for no other purpose.

The jury found Cox guilty on both counts.

After the jury returned its verdict, the district court issued a written order finding that the uncharged drug evidence was admissible "due to the 'inextricable link' between drug sales and guns," citing our decision in United States v. Thomas, 242 F.3d 1028 (11th Cir. 2001). The court also made the following findings: (1) the evidence was relevant to prove Cox knowingly possessed a firearm; (2) it was admissible under Fed. R. Evid. 404(b) as proof of motive, intent, or preparation; and (3) its probative value was not substantially outweighed by any danger of unfair prejudice. Cox then proceeded to sentencing.

The presentence investigation report ("PSI") recommended a base offense level of 20, pursuant to U.S.S.G. § 2K2.1, and a 2-level increase for obstruction of justice, under U.S.S.G. § 3C.1.1, based on Cox's post-arrest attempts to have Yancey and others help him remove the firearm from his residence. With a total offense level of 22 and a criminal history category IV, Cox faced a Guidelines range of 63 to 78 months' imprisonment.

9

At the sentencing hearing, the government objected to the PSI's failure to include an enhancement for possession of a firearm in connection with another felony, pursuant to U.S.S.G. § 2K2.1(b)(5). The government argued that Cox possessed the firearm in connection with the felony offense of drug trafficking. In response, Cox asserted that there was no evidence that he used the gun in connection with another felony, that he sold drugs, or that the gun was ever in the same room with the drugs. Thus, he claimed, there was an insufficient factual basis for the district court to find that the gun was possessed in connection with another felony offense.

The district court found that a preponderance of the evidence indicated Cox purchased the gun to protect himself while dealing in drugs, and that the gun and marijuana were present in Cox's house at the same time because he told his mother to dispose of the gun at a time when the drugs, paraphernalia, and cash were under his bed. Accordingly, the district court applied the 4-level enhancement under U.S.S.G. § 2K2.1(b)(5). With an adjusted offense level of 26 and a criminal history category IV, the Guidelines sentencing range was 92 to 115 months' imprisonment. After noting that the sentencing guidelines were advisory, the court sentenced Cox to 60 months' imprisonment as to Count 1 and 95 months as to Count 2, to be served concurrently. This appeal followed.

First, Cox argues the district court erred by allowing the drug evidence found under his bed to be admitted as "inextricably intertwined" evidence.[2] Cox was found guilty of violating 18 U.S.C. § 922(g)(1). The elements of the offense under § 922(g)(1) "require the government to prove beyond a reasonable doubt that the defendant was: (1) in knowing possession of a firearm, (2) a convicted felon, and (3) that the firearm affected interstate commerce." United States v. Billue, 994 F.2d 1562, 1565 n.2 (11th Cir. 1993). Prior to trial, Cox stipulated that he was previously convicted of a felony, and the firearm involved was shipped in interstate commerce. Thus, the only element that was in dispute at trial was whether Cox knowingly possessed a firearm. At trial, Cox's theory of defense was that the gun was not his and that he did not knowingly possess it. Thus, Cox put only the "knowing possession" element of the charged crime at issue, and indeed, built his theory of defense around disputing that element.

---

[2] Because we hold the admission of the evidence was proper as "inextricably intertwined" evidence, we do not reach the district court's alternative basis for admitting the evidence -- that it was admissible under Rule 404(b). We pause to note that we have held "the policies underlying Rule 404(b) are inapplicable when some of the offenses committed as part of a single criminal episode become 'other acts' merely because the defendant is not indicted for all of his actions." United States v. Thomas, 242 F.3d 1028, 1032-33 (11th Cir. 2001) (citing United States v. Aleman, 592 F.2d 881, 885 (5th Cir. 1979)). As in Thomas, the evidence of drug trafficking found in the defendant's residence here "did not amount to the use of bad character evidence to convict [the defendant] of being a felon in possession of firearms because the two offenses were not 'wholly separate and independent crimes.' The evidence of . . . drug trafficking was admitted to prove knowing possession of the firearms, not character." Id. at 1033 (quoting Aleman, 592 F.2d at 885).

Federal Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided" by law. Fed. R. Evid. 402. Evidence of uncharged criminal activities generally would be considered inadmissible extrinsic evidence under Rule 404(b). United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000). Such evidence, however, is admissible as intrinsic evidence of the charged offense if it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998) (emphasis added).

The district court relied on our decision in United States v. Thomas, 242 F.3d 1028 (11th Cir. 2001), to conclude that the drug evidence was "inextricably intertwined" with Cox's gun possession. In Thomas, we noted "the strong correlation between narcotics sales and the possession of firearms." Id. at 1031-32; see also United States v. Till, 434 F.3d 880, 883 (6th Cir. 2006) (noting that "[t]here is strong authority for the proposition that evidence of drug possession can and perhaps ought to be admitted in cases of alleged firearm possession, partly to show motive for such possession").

Here, we cannot say the district court clearly abused its discretion in allowing the evidence of Cox's drug sales in his house, as it was relevant intrinsic evidence from which the jury could infer that he knowingly possessed the firearm he hid in his parents' house. Cf. Thomas, 242 F.2d at 1032 n.5 (holding that evidence of drug sales in defendant's residence supported inference that defendant was using weapons also found in house to protect his drug business) (citing United States v. Martinez, 938 F.2d 1078, 1083 (10th Cir. 1991) ("in admitting firearms and large amount of cash, courts have recognized that high level of violence that is not uncommonly associated with the drug distribution business and the prevalence in this business of large-scale cash transactions") (citations omitted); United States v. Butcher, 926 F.2d 811, 816 (9th Cir. 1991) (noting "nexus between guns and narcotics, and between guns and other guns"); United States v. Simon, 767 F.2d 524, 527 (8th Cir. 1985) ("Firearms are known 'tools of the trade' of narcotics dealing because of the dangers inherent in that line of work.")).

Based on the evidence presented at trial, a juror could reasonably have concluded that the drugs and firearms were "in sufficiently close proximity, temporally and physically, to be relevant to proving [knowing possession of] the weapon[ ]." Thomas, 242 F.3d at 1032. Given the well-established correlation between drugs and firearms, we cannot find a clear abuse of discretion in the

13

district court's evidentiary ruling that the drug evidence was admissible as "inextricably intertwined" with Cox's firearm offense.

IV.

We likewise are unpersuaded by Cox's sentencing claim. The government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement. United States v. Askew, 193 F.3d 1181, 1183 (11th Cir. 1999). "Preponderance of the evidence is not a high standard of proof. It is not, however, a toothless standard either, and a district court may not abdicate its responsibility to ensure that the prosecution meets this standard before adding months or years onto a defendant's prison sentence." Id.

Section 2K2.1 of the Sentencing Guidelines provides for a four-level increase in offense level "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5). This enhancement can be applied whether or not a charge was brought or a conviction obtained. Id. comment (n.4). "While § 2K2.1(b)(5) does not define the phrase 'in connection with,' we have held that courts should give such phrases their ordinary meaning." United States v. Rhind, 289 F.3d 690, 695 (11th Cir. 2002).

14

We have analogized the "in connection with" language to the same language contained in U.S.S.G. § 2B5.1(b)(3), noting that the ordinary and natural meaning of "in connection with the offense" does not require that the firearm facilitate the underlying offense. Id. In Rhind, we concluded that firearms found in the defendant's car with the counterfeit money were used "in connection with" the counterfeiting offense because the firearm's presence "protected the counterfeit money from theft" while the defendants executed the felony. Id. at 695-96; see also United States v. Flennory, 145 F.3d 1264, 1270 (11th Cir. 1998) (concluding that, although firearm was in the defendant's car when he sold his drugs in a vacant lot across the street from his car, the firearm was used "in connection with" his felony offense because the defendant could have easily retrieved the firearm if it was necessary), superseded on other grounds, United States v. Brown, 332 F.3d 1341 (11th Cir. 2003); United States v. Gainey, 111 F.3d 834, 837 (11th Cir. 1997) (in the U.S.S.G. § 4B1.4(b)(3)(A) context, holding that firearm was used "in connection with" the defendant's heroin possession because the defendant had the heroin around his neck, and had placed the firearm in his pants pocket such that the weapon was readily accessible to him if he needed its protection).

Here, the district court did not clearly err by finding that Cox committed another felony offense for which he was not charged, namely possession of

marijuana with the intent to distribute it. Cox kept marijuana, a digital scale, baggies, and more than $6,000 in cash in his bedroom, and his codefendant, Yancey, testified that Cox provided him with marijuana. Moreover, Cox's girlfriend and his best friend both testified that Cox did not use marijuana, thus undermining his claim that the marijuana was for personal use. Finally, due to the close connection between drugs and firearms, the district court properly could have concluded that Cox's possession of the gun in the house in which he also possessed the marijuana was not a mere coincidence that was unrelated to the underlying felony, but, rather, that he possessed the firearm in relation to his drug possession. Accordingly, the court did not clearly err in its factual findings relating to the gun and drug evidence, nor did the court commit legal error in applying the offense level enhancement under § 2K2.1(b)(5).

**AFFIRMED.**